IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HIPERBARIC, S.A.,

        Plaintiff,

v.                                                    Civil Action No. 3:22cv464

OCVA HOLDINGS, LLC,

        Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the plaintiff's, Hiperbaric, S.A. ("Hiperbaric"), motion for default judgment. (ECF No. 8.) On June 28, 2022, Hiperbaric (1) petitioned the Court to confirm an arbitral award resulting from the breach of a contract regarding the delivery of equipment and (2) moved for summary judgment. (ECF Nos. 1, 2.) A process serving company served the registered agent for the defendant, OCVA Holdings, LLC ("OCVA"), on July 14, 2022.[1] Accordingly, OCVA's responsive pleadings were due on August 4, 2022. (*Id.*) On August 12, 2022, after OCVA failed to file responsive pleadings, Hiperbaric requested that the clerk enter default and moved the Court to enter default judgment. (ECF Nos. 7, 8.) The clerk entered default on August 26, 2022. (ECF No. 11.) For the reasons stated below, the Court finds that Hiperbaric's motion for entry of default judgment must be granted.[2]

---

[1] OCVA's registered agent received "the Summons, Proposed Order, Petition for Confirmation of Arbitral Award with Exhibits, Memorandum of Points and Authorities in Support of Petition for Confirmation of Arbitral Award with Exhibits, and Declaration of Jack L. Wuerker in Support of Petition for Confirmation of Arbitral Award." (ECF No. 6, at 1.)

[2] In considering Hiperbaric's motion, the Court relied solely upon Hiperbaric's petition to confirm the arbitration award, motion for summary judgment, motion for default judgment, and the declarations and exhibits attached thereto. To date, OCVA has submitted nothing to the Court.

1

# I. BACKGROUND

"Hiperbaric is a corporation organized under the laws of Spain," and "OCVA is a limited liability company organized in the Commonwealth of Virginia." (ECF No. 1 ¶¶ 1–2.) In October 2016, Hiperbaric and OCVA "entered into a contract" in which Hiperbaric "agreed to deliver . . . equipment" to OCVA. (*Id.* ¶ 6.) The contract said that:

> In the event of a dispute, controversy, or claim arising out of or relating to the Contract, [the parties] shall confer and attempt to resolve such matter informally. If such dispute or claim cannot be resolved in this manner, then the dispute or claim shall be referred first to [the parties'] respective executive offices for their review and resolution. If the dispute or claim still cannot be resolved by such officers within thirty days, *then [the parties] shall agree to submit to binding arbitration*[.] Jurisdiction over any conflict arising from the contract or relating thereto will be had exclusively by Hiperbaric's forum. In all cases, in derogation of the foregoing, Hiperbaric will always be entitled to deem the buyer's forum to have jurisdiction. The parties expressly agree that they may establish the following arbitration clause. *Any conflict arising from this contract will be definitively resolved in accordance with the Conciliation and Arbitration Regulations of the International Chamber of Commerce, by one or several arbitrators appointed in accordance with these Regulations.* If it is not established this way, Spanish court will be liable in case of conflict.

(ECF No. 1-2, at 11 (emphasis added).)

The total purchase price for the equipment was $551,000, with a down payment of $110,200 and a remaining balance of $440,800.[3] (*Id.* at 8 (listing the total price as "$551,000 USD" and providing terms of "20% down payment . . . and 40% at installation . . . 40% in 8 monthly installments").) Thus, OCVA was obligated to pay $220,400 at the time of the equipment's installation, and it was to pay the remaining balance of $220,400 in eight (8) monthly installments of $27,550 "beginning on the sooner of the signature date of the start-up document of the Equipment or sixty (60) days after reception at Claimant's facilities." (*Id.*; ECF No. 2-5 ¶ 9.)

---

[3] The contract's payment terms listed prices in US Dollars ("USD").

2

In December 2016, Hiperbaric delivered the equipment to OCVA in Topping, Middlesex County, Virginia, but the equipment "could not be commissioned because [OCVA] failed to supply certain items it was contractually obligated to supply." (ECF No. 2-1 ¶ 15; ECF No. 2-2 ¶ 95 (internal citations omitted).) Due to OCVA's failure to supply "electric power, a water source, a water-cooling system or an internet connection," Hiperbaric did not complete the equipment's installation until November 2017. (ECF No. 2-2 ¶¶ 95, 99 (internal citations omitted).) The completion of installation triggered the payment schedule;[4] OCVA was to pay the first installment "on March 27, 2017, with each of the seven subsequent payments due [every month for] the next seven months, with the last of the eight payments due on October 27, 2017." (ECF No. 2-5 ¶ 9.)

Although OCVA paid the down payment of $110,200, it failed to make any of the remaining payments for the equipment (totaling $440,800). (ECF No. 2-2 ¶¶ 96, 101.) Hiperbaric then "complied with all [of the arbitration agreement's] requirements" by engaging in "informal discussions with [OCVA] during much of 2018 and 2019." (ECF No. 2-5 ¶ 13.) In addition, the parties' "executive officers . . . [were] involved in further negotiations [throughout] 2019." (*Id.*) Thereafter, on December 21, 2020, Hiperbaric filed a request for arbitration with the Secretariat of the International Chamber of Commerce. (ECF No. 2-1 ¶ 18; *see* ECF No. 2-5.)

The record indicates that William Tolar Nolley, Jr., OCVA's founder, acted *pro se* during the arbitral proceedings following his counsel's withdrawal from the proceedings. (ECF No. 2-2

---

[4] The payment terms of the contract provide that the payment schedule would begin on the sooner of (1) "the signature date of [the] start-up document of the equipment" or (2) 60 days after reception at the customer facilities." (ECF No. 1-2, at 8.) Although the record indicates that OCVA's founder signed the contract on behalf of OCVA, (ECF No. 2-2 ¶ 9), Hiperbaric uses the date 60 days following "reception at the customer facilities" as the first payment installation date. In emails between Hiperbaric and OCVA, OCVA "admitted that it owes all sums demanded [$440,800] by [Hiperbaric]." (*Id.* ¶ 93.)

The arbitrator concluded that Hiperbaric "has performed the contractual obligations required to trigger [OCVA's] obligation to pay the balance of the Contract price." (*Id.* ¶ 178.)

¶ 14.) Beginning in March 2021, Nolley engaged in discussions with the arbitral tribunal and participated in the preliminary stages of the arbitration. (*See, e.g., id.*) Thus, OCVA knew that Hiperbaric had initiated arbitral proceedings. (*See id.*) Soon thereafter, Nolley failed to timely file additional documents that the tribunal had requested. (*See, e.g., id.* ¶¶ 22, 24–28.)

In April 2021, Nolley informed the arbitral tribunal that he had "several scheduled medical operations," but he continued to assure the tribunal that OCVA would provide requested submissions. (*E.g., id.* ¶¶ 28, 30, 32, 36.) Moreover, despite the arbitrator's request that Nolley "provide a schedule for his surgeries and time to convalesce," Nolley never relayed this information, and he instead failed to respond. (*Id.* ¶¶ 37–39.) On several occasions, the arbitral tribunal extended the time limit for OCVA to respond to requests and further participate in the arbitral proceeding. (*See id.* ¶¶ 33, 45.) It also "reminded . . . Nolley that he had not provided a schedule of surgeries," and it notified the parties that the Case Management Conference ("CMC") "would take place on [May 14, 2021]." (*Id.* ¶ 39.) After this reminder, Nolley did not "object[] to the proposed CMC date." (*Id.* ¶ 41.)

Nevertheless, Nolley did not participate in the CMC, and he later "informed [Hiperbaric] and the [arbitral t]ribunal that given his medical situation he had 'to suspend any further procedure in this matter.'" (*Id.* ¶ 43.) The arbitral tribunal asked Nolley to clarify this statement, and it again extended the period for Nolley to file requested documents, but Nolley did not respond. (*Id.* ¶¶ 43–46.) In August 2021, Nolley requested to suspend the arbitral proceeding, and he "claimed that [OCVA] was engaged in settlement discussions with [Hiperbaric.]" (*Id.* ¶ 51.) Hiperbaric rejected Nolley's statement, explaining that "that there were no ongoing settlement discussions." (*Id.* ¶ 53.) After August 2021, Nolley failed to further participate in the arbitral proceedings, and in October 2021, the arbitral tribunal closed the proceedings. (*See id.* ¶ 62.)

The arbitrator ultimately found in favor of Hiperbaric, and he ordered OCVA to pay Hiperbaric a total of $538,450,[5] plus interest. (*See id.* ¶¶ 178-81.)[6]

## II. STANDARD OF REVIEW

When a defendant fails to defend against a case, the plaintiff may seek an entry of default. *See* Fed. R. Civ. P. 55(a). After the Clerk of Court enters default pursuant to Rule 55(a), the Court may enter default judgment against the defendant. *See* Fed. R. Civ. P. 55(b)(2). "When a defendant defaults, he admits 'the plaintiff's well-pleaded allegations of fact.'" *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Thus, in reviewing a motion for default judgment, the Court accepts the plaintiff's well-pleaded allegations regarding liability as true. *See Ryan*, 253 F.3d at 780.

In addition, "[t]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *RZS Holdings*

---

[5] The arbitrator found that OCVA must pay the remaining balance on the contract ($440,800) plus attorneys' fees ($59,150) and arbitration costs ($38,500). (ECF No. 2-2 ¶¶ 174, 175, 178.)

[6] "The Tribunal awards Claimant, and Respondent is ordered to pay to Claimant, the following amounts bearing simple interest at the Spanish rate of 3% per annum from the dates below until full payment of all amounts:
 a. $27,550 bearing interest from 03 February 2017
 b. $27,550 bearing interest from 03 March 2017
 c. $ 27,550 bearing interest from 03 April 2017
 d. $27,550 bearing interest from 03 May 2017
 e. $ 27,550 bearing interest from 03 June 2017
 f. $27,550 bearing interest from 03 July 2017
 g. $27,550 bearing interest from 03 August 2017
 h. $ 27,550 bearing interest from 03 September 2017
 i. $ 220.400 bearing interest from 02 November 2017
 j. $ 59,150 for legal fees and expenses bearing interest from the date of this award. . . .
In addition . . . the . . . sum of $38,500 for the costs of the arbitration, bearing simple interest at the Spanish rate of 3% per annum from the date of this award." (*Id.* ¶¶ 179–180.)

*AVV v. PDVSA Petroleos S.A.*, 598 F. Supp. 2d 762, 765 (E.D. Va. 2009), *aff'd sub nom. RZS Holdings AVV v. PDVSA Petroleo S.A.*, 383 F. App'x 281 (4th Cir. 2010) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). Moreover, "[t]here is a strong federal policy in favor of recognizing arbitration awards, which is particularly strong with respect to foreign arbitration awards." *Afghan Growth Fin. LLC v. Ghafoor*, No. 1:14cv669, 2021 WL 1306416, at *5 (E.D. Va. Mar. 8, 2021) (internal citations omitted). Ultimately, the scope of this Court's review "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998).

### III. JURISDICTION, VENUE, AND SERVICE OF PROCESS

For a court to render default judgment, (1) it must have subject-matter jurisdiction and personal jurisdiction over the defaulting party; (2) venue must be proper; (3) and the court must be satisfied that the plaintiff properly served the defaulting party. *See, e.g., Evolution Strategies, LLC v. Unlimited Mktg. Enters. Inc.*, No. 1:19cv592, 2019 WL 5955379, at *1 (E.D. Va. Sept. 27, 2019), *report and recommendation adopted*, 2019 WL 5902116 (E. D. Va. Nov. 12, 2019).

First, Hiperbaric's petition for the court to confirm a nondomestic arbitral award is governed by the New York Convention,[7] and the Court therefore has subject matter jurisdiction. *See* 9 U.S.C. § 203. To have personal jurisdiction over a defendant, the standards of both federal due process and the forum state's long-arm statute must be satisfied. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process

---

[7] Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 ("New York Convention"). The United States became a signatory to the New York Convention in 1970, *see* 21 U.S.T. 2556, with the reservation "that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State." New York Convention, art. I(3).

6

confers personal jurisdiction if a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Section 8.01-328.1 of the Virginia Code, this forum's long-arm statute, "extends the jurisdiction of its courts as far as federal due process permits." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). A district court has either specific personal jurisdiction over a defendant "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). The well-pleaded facts establish that OCVA is a Virginia limited liability company located in Topping, Middlesex County, Virginia, and is thereby subject to general jurisdiction in this Court.

Second, venue is proper pursuant to 28 U.S.C. § 1391(b)(1), as OCVA resides in Middlesex County, Virginia. Venue is also proper under § 1391(b)(2), because, pursuant to the contract that gave rise to this claim, Hiperbaric delivered the equipment to OCVA at its location in Middlesex County, Virginia.

Finally, Hiperbaric properly served OCVA. A private process server personally served the summons, proposed order, and affiliated exhibits on the registered agent for OCVA, Henry R. Pollard V. *See* Fed. R. Civ. P. 4(h); *see also* State Corporation Commission Clerk's Office Information System, https://cis.scc.virginia.gov/ (search OCVA Holdings, LLC in "Entity Name" field) (last visited October 3, 2022).

## IV. LEGAL ANALYSIS

Hiperbaric asks the Court to confirm a nondomestic arbitral award governed by the New York Convention. The Federal Arbitration Act codifies the New York Convention, a multilateral treaty, which applies to both (1) "arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought"; and (2) "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention, Art. I(1); *see* 9 U.S.C. §§ 201–208. An arbitral award falls under the New York Convention if it arises out of a "[commercial] legal relationship" such as a contract." 9 U.S.C. § 202.

Here, the New York Convention applies because Hiperbaric seeks to enforce a non-domestic award in a United States district court. *RZS Holdings AVV*, 598 F. Supp. 2d at 766 ("Awards are considered non-domestic and thus governed by [the New York Convention] when they are 'made within the legal framework of another country, e.g., pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction.'" (quoting *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte*, 141 F.3d 1434, 1441 (11th Cir. 1998))). In answering Hiperbaric's request for arbitration, OCVA acknowledged that "the governing law is that of Spain and the United Nations Convention on Contracts for the International Sales of Goods." (ECF No. 2-2 ¶ 14.) Moreover, as discussed, Hiperbaric is a corporation organized in Spain. (ECF No. 2-1 ¶ 6.) Finally, the parties entered a commercial legal relationship—a contract—that gave rise to this dispute. Thus, this action falls under the New York Convention. Because an action governed by the New York Convention "shall be deemed to arise under the laws and treaties of the United States," this Court has original subject matter jurisdiction over this action. 9 U.S.C. § 203; 28 U.S.C. § 1331; *see supra* Section III.

This Court "shall confirm" an arbitral award falling under the New York Convention "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Article V of the Convention states that, "*at the request of the party against whom it is invoked*," a district court may deny confirmation of an arbitral award if:

> (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . or
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention, art. V(1) (emphasis added). But, notably, the Court may refuse enforcement "only if [the] party furnishes . . . proof." *Id.* Given OCVA's default status in this case, it has not put forth any arguments against confirmation of the arbitral award. In addition, after reviewing the record, the Court finds that none of the above grounds for refusing to confirm Hiperbaric's arbitral award exist here.

First, nothing in the record indicates that either party was "under some incapacity," or that the award was invalid under the laws of Spain. As discussed above, the record indicates that OCVA's founder, William Tolar Nolley, Jr., intermittently communicated with Hiperbaric and the arbitrator. (ECF No. 2-2 ¶ 12, 14, 26, 28, 35, 36, 38.) Although he claimed to have "several scheduled medical operations," he never "provide[d] a schedule for his surgeries and time to

9

convalesce" when given the opportunity to do so. (*Id.* ¶¶ 28, 37.) Second, the record indicates that OCVA had ample notice of—and benefitted from multiple extensions to participate in—the arbitral proceeding. (*Id.* ¶¶ 14., 33, 35.) Third, the record indicates that the arbitration award addresses only the disputed contract that Hiperbaric submitted to arbitration. (*See id.* ¶¶ 8, 178–181.) Fourth, the arbitral procedure comported with the parties' contract and Spanish law. (*See id.* ¶¶ 8–10, 155–177). Fifth, the parties are bound by the arbitral award, and there is no indication that the award has been set aside. (*See id.* ¶ 8.)

> A district court may also, on its own, refuse to enforce an arbitral award if it finds that:
>
> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, art. V(2). The subject matter of this dispute is "capable of settlement by arbitration" under the United States' laws, and enforcing the arbitral award does not contradict public policy of the United States. *See* New York Convention, art. V(2); *Ghafoor*, 2021 WL 1306416, at *5 (explaining that "[t]here is a strong federal policy in favor of recognizing arbitration awards, . . . is particularly . . . with respect to foreign arbitration awards." (internal citations omitted)). Accordingly, the Court finds no meritorious grounds for denying Hiperbaric's petition.

### V. <ins>CONCLUSION</ins>

For the foregoing reasons, the Court concludes that confirmation of the arbitral award is appropriate, and that OCVA must pay Hiperbaric (1) the principal amount of $538,450.00; (2) prejudgment and postjudgment interest per the terms provided in the arbitral award[8] and (3) post-judgment interest at a rate of three percent (3%) per annum on the principal balance currently due. Accordingly, the Court will grant Hiperbaric's motion for default judgment. (ECF No. 8.)

---

[8] *See supra* note 6 and accompanying text.

An appropriate order will accompany this opinion.

Let the Clerk mail a copy of this Opinion to all counsel of record and to the defendant via U.S. Mail at the address listed on the summons, (ECF No. 6).

Date: 2 November ~~October~~ 2022
Richmond, VA

/s/